IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ITEM OSAGHAE | § | CIVIL ACTION NO._____ |
| | § | |
| vs. | § | |
| | § | |
| BRORON OIL & GAS, LLC; BRORON OIL | § | JURY TRIAL REQUESTED |
| AND GAS LIMITED AND HENRY | § | |
| OJOGHO | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

COMES NOW, ITEM OSAGHAE  (hereinafter "Osaghae" or "Plaintiff") complaining of Broron Oil & Gas, LLC ("Broron Texas"), Broron Oil & Gas Limited ("Broron Nigeria") and Henry Ojogho (hereinafter "Ojogho" or collectively "Defendants") and for cause of action would show this Court as follows:

**I.**

**PARTIES**

1.      Plaintiff, Item Osaghae is a United States Citizen and a resident of Harris County, Texas.

2.      Defendant, Broron Oil & Gas, LLC was initially charted as a "for-profit" Texas Limited Liability Company with its principal place of business in Harris County, Texas. Broron Oil & Gas, LLC's charter was forfeited in January of 2017. Broron Oil & Gas, LLC may be served through its president Henry Ojogho at his Katy residence located at 27627 Brentsprings Run Ln., Katy, Texas 77494.

3.      Defendant, Broron Oil & Gas Limited is a Nigerian company who may be served through its president Vice Chairman at Plot 15, Block 110, Henry Ojogho Crecent, Off Road 69, Lekki Phase 1, Off Lekki Ajah Expressway, Lagos, Nigeria.

4.      Defendant Henry Ojogho is a Nigerian citizen who may be served at his Texas

residence located at 27627 Brentsprings Run Ln., Katy, Texas 77494.

## II.

### JURISDICTION AND VENUE

5.       This Court has jurisdiction over this lawsuit under 18 U.S.C. §1961, et seq. (statutory jurisdiction under RICO); 28 U.S.C. §1331 (jurisdiction for matters arising under 18 U.S.C. §1962); as well as 28 U.S.C. §1367 (supplemental jurisdiction over related state law claims that arise under the same operative facts).

6.       The Court has personal jurisdiction over all defendants, which, at all relevant times, resided in, were found in, had an agent in, or transacted business in the State of Texas, including the Southern District of Texas.

7.       With respect to Defendant Broron Oil & Gas Limited (Broron Nigeria), Defendant purposefully availed itself of the laws of Texas and the United States both generally and specifically by 1) using Texas laws to create a puppet corporation in the State of Texas which it used to perpetrate a fraud for purposes of immigration, 2) in directing its funds into banks located in the State of Texas, 3) by employing and directing citizens of the United States and residents of the State of Texas to perform tasks for it both in the State of Texas and abroad, and 4) by knowingly, regularly and systematically directing emailed instructions to individuals in the State of Texas and the United States regarding all of the above activities.

8.       Venue is permissible in this District under 28 U.S.C. §1391(b)(1) and 28 U.S.C. §1391(b)(2) because two of the Defendants reside in the Southern District of Texas and a substantial part of the events or omissions giving rise to the claims occurred in this District. Venue is also proper in this District under the RICO venue provision contained in 18 U.S.C. §1965.

## III.

## FACTS

### Osaghae and Broron

9.      Item Osaghae is a United States citizen and a United States Coast Guard licensed engineer with 34 years marine engineering and technology experience building, sailing, and designing offshore vessels. From 1998 through 2015 Osaghae worked for Hornbeck Offshore Services as a chief engineer including work escorting U.S. Navy submarines for offshore dive testing as well as work with BP, Pemex, Saipem and Petrobras in supporting offshore oil exploration and development.

10.     In the spring of 2015 Mr. Osaghae was approached by Mr. Henry Ojogho to become the "Asset Manager" for Broron Oil and Gas. Mr. Ojogho is a Nigerian national who is from the same region in Nigeria as Mr. Osaghae's family; owns Broron Nigeria as well as Broron Texas; and owns a residential home in Cinco Ranch in Katy, Texas where his wife, four children currently reside.

11.     Unknown to Mr. Osaghae at the time, the creation and use of Broron Texas was a fraud designed to legitimize Mr. Ojogho's travel to the United States through the filing of false L-1 visa applications and extensions on behalf of Mr. Ojogho; to further a financial and bank fraud necessary to support his wife and children living in the United States; and to avoid taxation on personal and business income fraudulently funneled through the Broron Texas bank accounts for the personal use of himself and his wife while in the United States.

12.     In reality, Mr. Osaghae, upon his employment with Broron Texas would actually be providing labor only to Broron Nigeria, would never have an opportunity to work on

Broron projects in the United States and would not have the benefits of having a real domestic employer when Broron Texas ceased making his contractual salary payments in 2016.

***The Broron Texas "Job"***

13.       When Mr. Ojogho and Mr. Osaghae initially discussed the Broron job Osaghae was still employed with Hornbeck Offshore where he had been a chief engineer for 17 years. Mr. Osaghae was induced to accept the employment based on the representation that the job would be located in Houston, Texas; would be an "asset manager" position as opposed to the on-vessel work of a chief engineer; and would have an agreed salary of $210,000.00 annually as well as full medical and life insurance benefits for himself, his wife and three children. Ultimately on the basis of Ojogho's representations, Osaghae accepted the job and on May 12, 2015 executed a "Contract of Employment" with Broron Oil & Gas, LLC, a Texas Limited Liability Company, which was countersigned by Ojogho. *See* Exhibit A (employment agreement). A review of the Texas Secretary of State filings reveals that Broron Oil & Gas LLC was chartered on August 22, 2014 with Henry Ojogho as the only manager. Exhibit B (Certificate of Formation).

***Broron Texas and Broron Nigeria***

14.       Soon after signing the Employment Contract, Osaghae was provided with business cards for both Broron Texas and Broron Nigeria, both of which listed him as an "Asset Manager". Osaghae was further supplied with a United States and Nigerian email address along with a Broron created email footer that listed him as an Asset Manager for both Broron Nigeria, and Broron Texas and listed the Houston address and contact number under the heading "U.S.A. Office".

15.     By June 10th of 2015, less than three weeks after he had signed his Contract of Employment with Broron, Osaghae was instructed to travel to Lagos, Nigeria for work because there "was nothing for him to do in Texas". This would be the first of at least 17 international trips he would undertake for Broron between June of 2015 and July of 2017. In each case, Osaghae was asked to perform work on a vessel owned or under construction by Broron Nigeria or on a Broron Nigeria project. Contrary to the representations that Ojogho had made to Osaghae to induce him to leave Hornbeck for Broron Texas, Osaghae spent on average at least 11 months of the year overseas on projects for Broron Nigeria.

***Failure to Comply with Employment Agreement***

16.     Osaghae was never provided with benefits or a life insurance policy of any kind, but between May of 2015 and April of 2016 he was paid according to the contract with paychecks issued through "Paychex, Inc." which accurately reflected a calculation of his gross salary, federal withholdings and final net monthly income. *See e.g.* Exhibit C

17.     Beginning in May of 2016 Osaghae's check was cut in half without notice and he was told that the company was having financial troubles but that his full current salary would be caught up and restored. Based on this representation and the fact that he was working on the new construction of a Broron Nigeria ship (the OSV Grace) that he had personally designed from the ground up in a Chinese shipyard, Osaghae continued working for Broron.

18.     In October of 2016, while he was still working on the OSV Grace, Mr. Osaghae, for the first time, failed to receive a salary check in any amount. When he contacted Ojogho about this lack of payment, again he was told that the condition was temporary and that once he was able to secure the completion and release of the OSV Grace, the amount of funds coming into the company would permit it to catch him up on all back pay and that Broron would

continue to pay his salary at the agreed rate. Despite this representation Osaghae's salary was never restored.

***Threats, Admissions, Blackmail, Coercion, and Resignation***

19.     In 2016, Osagahe became aware that a number of employees of Broron Texas and Broron Nigeria were not being paid wages in a timely manner. Many of those employees were 3-4 four months behind on the wages they were due at that time. This situation persisted and only became worse in 2017 as the delay in salary payment grew.  Most of the Broron employees that were due wages were Nigerian citizens who are employed at every level of the Broron Nigeria enterprise but only a few of them had been unpaid (or underpaid) for as long as Osaghae by 2017. In October of 2017, prior to engaging counsel, Osaghae made a final request to Ojogho and Broron that his past due wages and expenses be paid. In response to this request Ojogho contacted Osaghae and stated that he should not make such claims against Broron because he had "*video of you with girls here in Nigeria*" and threatened to disclose this video to Osaghae's wife and family in an effort to prevent him from recovering the funds he was due. Osaghae rejected this attempt at extortion of his contract rights and insisted on the payment of what he was due from Broron and Ojogho.

20.     Upon information and belief the appearance that Ojogho had been compelled to pay one of his unpaid employees posed a substantial risk that other employees would make similar demands for payment and threaten the overall Broron enterprise which was surviving largely based on a the denial of wages to its workforce.

21.     Despite Osaghae's demand for payment and the fact that he had received no salary from Broron since October 2016, on September 22, 2017 Broron Nigeria sent an email to

Osaghae requesting that he embark on a trip to China to prepare the OSV Grace for sailing to Nigeria as the Chief Engineer. *See* Attached Exhibit D.

22.     On September 26, 2017, counsel for Osaghae sent a written demand to Ojogho, Broron Nigeria, and Broron Texas demanding payment for the past due wages, expenses and the repayment of the balance of a personal loan that Osaghae had made to Ojogho. The balance of past due wages, expenses (personal and business), unpaid personal loan payments, interest, and attorney's fees as of the date of the letter was $340,000.00.

23.     In response to Osagahe's written demand for unpaid wages he received an email from Broron Nigeria which claimed that he had abandoned his employment, that he had failed to meet key employment standards and that Broron Nigeria was recalling their September 22, 2017 email "as you and the Executive Management of the Company will renegotiate the new terms and conditions of engaging you as a CHIEF ENGINEER for our Nigerian based company (BRORON OIL AND GAS, LIMITED NIGERIA) to enable you proceed on a trip to China to sail the Vessel to Nigeria" *See* Exhibit E.

24.     Also in response to Osaghae's demand, on September 28, 2017, Ojogho contacted Osaghae directly via the WhatsApp Messenger service and left him a voice message which stated in part the following:

      a.   "Whatever it is that is owed to you, we will calculate it and you will get it."

      b.   "You did not have the capacity to do what was needed."

      c.   "Mr. Item wake up from your slumber."

      d.   "I know your wife I know your mother I know your brother."

      e.   "If you say you want to scratch your body your blood will be all over the place."

Plaintiffs' Original Complaint

f. "I will prove everything I want to prove and you will prove everything you want
to prove and if I find out that my family has been hurting I will get a way of also
revisiting to put you in a position where you will not be happy."

25.     On September 29, 2017, Mr. Osaghae submitted his resignation letter to
Broron Texas. *See* Exhibit D.

**Broron Oil & Gas, LLC (Broron Texas) was created as part of a Racketeering Enterprise**

26.     Upon review of the emails, documents, bank accounts, federal and state tax
filings, immigration documents and other materials it is apparent that Broron Texas, including
Mr. Osaghae's employment with the company, was part of a larger scheme by Broron Nigeria
and Henry Ojogho to create a fraudulent shell company for the purpose of 1) defrauding
creditors (including employees), 2) securing L-1 travel access for Mr. Ojogho to travel to the
United States where his family resided by falsely representing the nature, condition and function
of the company, 3) to transmit income to Ojogho and his family without proper bank or tax
reporting, and 4) to create a fictional workplace and income which would support Ojogho's own
personal banking transactions in the United States.   In furtherance of this scheme, Ojogho
directed the following activities:

*A.     Knowing Statements of False Facts in Connection with Immigration Application*

27.     Upon information and belief, Defendant Ojogho made false material
representations to his counsel and to the United States in applying for an L-1 visa in 2014. The
L-1 visa is a temporary non-immigrant visa which allows qualified overseas companies to
relocate foreign qualified employees to its U.S. branch, affiliate, or subsidiary. Emails which
were forwarded to Mr. Osaghae after he began employment at Broron Texas reflect that Ojogho

obtained an L-1 visa sometime in 2014 based on his charter of Broron Texas and a company by the name of Mindhub.

28.     Emails from Mr. Ojogho and Broron Nigeria in 2016 reflect that Broron and Ojogho were individually and collectively falsely representing that individuals were employees of Broron Texas and Mindhub; that Mr. Ojogho's wife was an employee of the company; that Broron Texas was properly capitalized and that Broron Texas had the ability to pay employees their full salaries. *See* Exhibit F The emails further falsely reflect that individuals including specifically, Mr. Chike Okoye and Mr. Angel Cuaresma, were paid a salary when, in fact, neither of these individuals was paid.

29.     Upon information and belief, all of the above false information was incorporated at the direction of Mr. Ojogho into a an EB-1(3) petition, an L-1 application and subsequent applications for extensions to support Mr. Ojogho's visa status for travel and stay in the United States.

## B.     *Breach of Leases*

30.     Upon information and belief, Broron Nigeria and Ojogho further used business addresses associated with Broron Texas to falsely lend credence to representations made to banks, employees and United States Immigration. When Mr. Osaghae joined the company, Broron Texas had lease space located at 1980 Post Oak Blvd., 15th Floor, Houston, Texas 77056. Broron Texas breached that lease in 2016 and subsequently moved into 7322 Southwest Freeway, Suite 2070, Houston, Texas 77074. Broron Texas subsequently breached that lease and since that date has not had a physical office location in the United States.

31.     Upon information and belief, this was part of a larger scheme to reflect credible operations in the United States to which at least two commercial landlords fell victim.

32.     During the time period he was an employee with Broron Texas, Osagahe also made payment from his personal bank account to the commercial landlords for lease space on July 31, 2016 (Boxer Properties $2,733.73) and September 20, 2016 (Arena Group, LP $3,143.79) which forms part of his claim for unpaid expenses due from Broron.

## C.    *Broron Texas Bank Account*

33.     In January of 2016, Mr. Ojogho instructed Mr. Osaghae to open up a bank account for Broron Texas.[1] As directed, Mr. Osaghae opened a bank account at JP Morgan Chase in the name of Broron Texas. From the time the account was opened until Mr. Osaghae's resignation from the company, Osaghae regularly requested that Mr. Ojogho add his name to the bank account as the sole owner of Broron Texas; but on each such occasion, Mr. Ojogho refused, opting instead to send repeated requests to Mr. Osaghae to handle financial transactions on the account.

34.     From January through May of 2016, Ojogho made, or directed, the deposit of funds into the Broron Texas bank account and directed Osaghae to make payment for various expenses associated with Broron Texas, Broron Nigeria and Ojogho personally for the account. The largest single deposit was made in February of 2016 when an offshore company wired the sum of $615,093.30 into the company account.[2] The February deposit was subsequently largely disbursed by a wire transfer to the First Bank of Nigeria in Lagos in a wire transfer which noted that it was "for staff wages" ($300,000); a wire transfer to Bank of Singapore noting "salary for February" ($11,500); a wire transfer to Bank of Singapore noting "salary for March"($11,500); a

[1] Despite being incorporated in 2014, Broron Oil & Gas LLC had not had a United States bank account prior to January of 2016. The creation of the account also closely coincides with the 2016 resubmission of Ojogho's Fimmigration application (attached hereto as Exhibit F) in which he makes representations regarding the company finances and bank account.

[2] In Ojogho's September 2017 WhatsApp message to Osaghae he refers to this as a "loan" that he obtained for the company.

wire transfer to Bank of China ($2,300); a wire transfer to the Wells Fargo account of Henry Ojogho in Katy, Texas; as well as payments to the Paychex payroll service totaling $57,054.61.[3] The last significant deposit to the account was made in August of 2016 and at no point in time from its creation through September of 2017 did the account receive payment on any work actually performed by Broron Texas for any customer of Broron Texas.

35.     Regardless of the balances in the account, Mr. Osaghae was further directed to pay other expenses, including lease payments for Broron Texas lease space; the lease for a separate apartment maintained by Mr. Ojogho near downtown Houston; spare parts purchased for Broron Nigeria vessels; as well as to make and deliver cash payments to Mr. Ojogho when he personally travelled to Houston or deliver such payments directly to his wife in his absence. When the account had insufficient funds to make these payments Osaghae was asked to pay the expenses of Ojogho, Broron Nigeria and Broron Texas personally or deposit his own personal funds into the Broron Texas account to cover the relevant expenses. In total, Osaghae advanced the Defendants the sum of $28,614.28 in cash and paid expenses based on the false representation that such expenses would be reimbursed by Broron.

36.     Upon information and belief, the receipt and disbursement of funds directed by Ojogho and Broron was part of a conspiracy to avoid filing FBAR, a conspiracy to misrepresent the condition of the Broron Texas for the purpose of falsely inflating Mr. Ojogho's financial condition to United States banks, for the purpose of, and in furtherance of, Ojogho's immigration fraud, as well as for purposes of evading taxation of Mr. Ojogho, his wife and the Broron Texas entity.

---

[3] At no point in time did Broron Oil & Gas, LLC (Broron Texas) have staff in Nigeria or China other than when Mr. Osaghae travelled there to work on the Broron Nigeria vessel OSV Grace and Mr. Osaghae was never paid any funds through Chinese Banks. Broron Nigeria did have staff at both of these locations.

**Personal Dealings of Defendant, Ojogho**

*D.      Cadillac Escalade*

37.      In April of 2016, Ojogho also sought to purchase a 2016 Cadillac Escalade with an initial purchase price in excess of $100,000.00 for Ojogho's personal use in Houston, Texas. Originally, Ojogho requested that Osaghae co-sign on the loan for the Caddilac because Ojogho had insufficient credit with any United States bank and wanted to increase his US credit rating; however, when the original financing was returned on the vehicle with the addition of Ojogho to the automobile loan the interest rate became prohibitive. Therefore Osaghae purchased and titled the vehicle entirely in his name and entered into an automobile loan agreement with Osaghae for the balance due. Osaghae made payments on the vehicle until that balance due on the car was paid in full, after which Osaghae received title to the vehicle. Ojogho subsequently failed and refused to make payment to Osaghae for at least $20,000.00 of the sum Osaghae had paid on the vehicle.

38.      Following Osaghae's resignation in September of 2017, he retained a repossession company who collected the vehicle and returned to Osaghae for safekeeping pending the outcome of this dispute.

*E.      Cinco Ranch Property*

39.      Osaghae subsequently became aware that Ojogho had purchased for himself, in his own name, a parcel of residential property located in Cinco Ranch, Katy, Fort Bend County, Texas which as of 2017 was listed on the Fort Bend County tax roll at an value of $702,190.00. The property, legally described as Block 1, Lot 34 of Cinco Ranch Northwest, Section 9 (hereinafter the "Cinco Ranch Property"),  was further subject to an original note dated May 12,

2015 and payable from borrowers Henry Ojogho and his spouse, Selebi Gloria Ojogho in the original sum of $651,899.00.

40.      Upon information and belief, and based in part upon their interaction with respect to the Cadillac transaction, Osaghae has reason to believe that Ojogho made false and fraudulent representations regarding the condition of Broron Texas, his residency and financial capacity in connection with obtaining original financing for the Cinco Ranch Property.

## F.    Secreting of Assets

41.      On October 19, 2017, a colleague in Nigeria informed Osaghae that he had personally overheard that Ojogho's plans were to delay any legal proceedings initiated by Osaghae in Texas to collect his past due wages until Ojogho could liquidate all of his and Broron's assets inside the United States and remove them to Nigeria.

## G.    Collapse of Scheme

42.      At all times while Plaintiff was engaged with Broron Texas he was led to believe that the Company was struggling to pay salaries because it was investing heavily in the completion of the new vessel OSV Grace which would provide substantial daily income to Broron, that upon the completion of that vessel the USA office would be re-staffed and viable and he would be able to resume his position with the company but in the summer of 2017 Osaghae learned that Broron was unable to make payments to the shipyard for the vessel while at the same time Ojogho was spuriously spending money on trips to Dubai and other locations. It was at that time that Osaghae sought legal counsel and reviewed his email and the history of the creation of Broron Texas and discovered that the entire endeavor had been an artifice to further Ojogho's personal interests in the United States.

Plaintiffs' Original Complaint

## IV.

## RICO – 18 U.S.C. § 1962(c)

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

43.      Plaintiff incorporates the allegations set forth in paragraphs 1-42 above as if set forth verbatim herein.

44.      Plaintiff is a "person" within the meaning of 18 U.S.C. § 1961(3) and § 1964(c).

45.      Ojogho, Broron Nigeria and Broron Texas constituted an "enterprise," within the meaning of 18 U.S.C. § 1961(4) and § 1962(c), in that they were "a group of individuals associated in fact" (hereinafter referred to as the "Broron Fraud").

g.   Ojogho, Broron Nigeria and Broron Texas shared the common purpose of (among other things) presenting false material information to United States Immigration services for purposes of legitimizing Ojogho's travel to the United States.

h.   Ojogho, Broron Nigeria and Broron Texas were further related in that they performed or were part of an bank scheme that was designed to 1) falsely represent the independent financial condition of Broron Texas, 2) to avoid federal taxes on monies received in the United States, 3) to circumvent monetary transfer regulations and 4) which was designed to defraud creditors including Broron Texas' United States employees, various commercial landlords, and the Texas Workforce Commission.

i.   Ojogho, Broron Nigeria and Broron Texas were engaged in bank fraud designed to conceal impermissible transactions and artificially and falsely inflate Mr.

Ojogho's credit in the United States.

j.   Ojogho, Broron Nigeria and Broron Texas were engaged in acts of extortion and blackmail in an attempt to dissuade Osaghae from pursuing his claim for unpaid wages.

46.   Ojogho is a "person" within the meaning of 18 U.S.C. § 1961(3) and § 1962(c), who individually conducted, participated in, directed, engaged in, and operated and managed the affairs of the Broron Fraud through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1) and § 1961(5) and § 1962(c). Said pattern of racketeering activity consisted of, but was not limited to, 1) the fraudulent representation of the circumstances of Mr. Osaghae's position with Broron Texas and subsequent representations regarding the payment of past due wages; 2) the false and fraudulent creation and use of the entity Broron Texas as a separate, meaningful and viable entity; 3) the false statements and representations concerning the Broron Texas entity and its employees which Ojogho directed to be included in federal immigration applications for his travel to the United States; 4) the fraudulent representations and directions relating to the Broron Texas bank account including; a) reference to the existence and balance of such account in fraudulent immigration filings, b) the use of such account to convey personal funds to Ojogho and his wife in breach of tax obligations, and c) to accomplish the transfer of funds from offshore accounts into the Broron Texas account from Broron Nigeria creditors or other Broron accounts in breach of FBAR reporting requirements; 5) Ojogho's use of the shell company Broron Texas to obtain credit under false pretenses in the United States for the purchase of residential property; and 6) threats made by Ojogho against Mr. Osaghae for pursuing his right to collect past due salary including threats to destroy his reputation as well as threats against his family remaining in Nigeria.

47.    **Wire Fraud**: Plaintiff would show that Defendants acting in enterprise, committed wire fraud via interstate, emails, telephone calls, and internet communications where such actions:

   a.  Constituted a scheme to defraud conducted through the mails and/or over wire transmissions;

   b.  With the intent to defraud the Plaintiff and similarly situated members of the public; and

   c.  Defendant did in fact transmit by wire interstate materials in furtherance of this scheme.

48.    It shall be a crime for a party "having devised or intended to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice." 18 U.S.C. § 1343.

49.    The Defendants acting alone and in concert, personally or through agents, used interstate wires to be used for the purpose of advancing furthering, executing, concealing, conducting, participating in or carrying out the Broron Scheme within the meaning of 18 U.S.C. § 1343.

50.    Plaintiff would show that Defendant transmitted (at least) the following categories of information over interstate wires in furtherance of their racketeering activities 1) representations, calls, messages and emails to Plaintiff concerning the terms, location and scope of work with Broron Nigeria; 2) representation that Plaintiff would be paid in full for salary

shortfalls; 3) representation that Plaintiff would be paid for company expenses he paid on behalf of Broron Texas; 4) representations made to Defendants immigration counsel concerning Broron Texas for purposes of inclusion in an L-1 application; and 5) Mr. Ojogho's threats against Mr. Osaghae made in furtherance of the fraud.

51.     Each of the above acts was committed by the Defendants with the intent to defraud and plaintiff and those similarly situated justifiably relied on the representations and omissions made by the Defendants to their detriment.

52.     **Fraud and Misuse of Visas Permits and Other Documents**: Plaintiff would further show that he was hired by Broron Texas as part of Defendants overall scheme to compile false information for submission in connection with the immigration application for Defendant Ojogho.

53.     It is unlawful in the United States to "knowingly make[s] under oath, or as permitted under penalty of perjury under section 1746 of title 28, United States Code, knowingly subscribes as true, any false statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder, or knowing presents any such application, affidavit, or other document which contains any such false statement or which fails to contain any reasonable basis in law or fact--". 18 U.S.C. § 1546.

54.     Herein, Defendants knowingly made, created and presented applications and/or other documents which contained false statements in support of immigration applications (including specifically but without limitation those set forth in Exhibit F) filed in favor of Defendant, Ojogho; wherein such applications made false representations about the workforce of Broron Texas as well as the nature of its independence and its ability to pay salaries as of the date of the application.

55.     **Extortion/Interstate Communications**: Plaintiff would further show that Defendants engaged in federal and state extortion in attempting to coerce the Plaintiff into abandoning his wages.

56.     A Defendant commits the state offense of extortion where he intentionally and unlawfully deprives the Plaintiff of his property through the use of deception or coercion. Tex.Penal Code Ann. §31.01(3)(A). Similarly it is a federal crime to "transmit in interstate or foreign commerce any communication containing any …. threat to injure the person of another" or to "with intent to extort from any person, firm, association, or corporation, any money or other thing of value, transmit[s] in interstate or foreign commerce any communication containing any threat to injure the property or reputation of the addressee" *See*. 18 U.S.C. § 875.

57.      Defendant transmitted via international telephone call, in person and via international WhatsApp messages threating messages asserting 1) that Defendants would make false claims that Plaintiff had cheated on his wife while in Nigeria and 2) by suggesting that the Plaintiff's family would be unsafe in Nigeria if he continued to pursue his claims for monetary recovery.

58.     Defendant Ojoghos actions in issuing such statements in foreign commerce was designed and intended to deprive Plaintiff of his right to wages and expenses by threat, extortion and coercion.

59.     Plaintiff was ultimately a victim of the Broron Fraud as he was unknowingly hired as credible evidence of a qualified United States employee which served to bolster the otherwise overwhelmingly fraudulent assertions made to a) immigration officials, b) banks, and c) commercial landlords regarding the scope and function of Broron Texas.

60.     As a result of the Broron Fraud, Plaintiff was denied the job that was

represented to him (as there never was nor was there ever any need or plan for a United States "asset manager"); and was instead shipped overseas to oversea a project and denied the benefits of the employment contract he had been induced to sign by Broron and Ojogho. As a result of this scheme, Plaintiff was damaged by the Defendants in the sum of $288,614.28 which totals the amount of salary and expenses he was due in connection with his employment.

## V.

## BREACH OF CONTRACT

61.      Plaintiff incorporates paragraphs 1 - 60 as if set forth verbatim herein.

62.      Plaintiff would show that he had a valid and binding employment agreement with the Defendants and that he is the property party to enforce that agreement.

63.      Plaintiff would show that the written agreement was never amended modified or superseded as acknowledged by Defendants in Exhibit E.

64.      Plaintiff would further show that he performed, tendered performance or was excused from performing his contractual obligations under the employment agreement.

65.      Plaintiff would further show that beginning May 2015, Broron Texas breached its agreement by failing to provided the benefits agreed to be provided under the contract, further breached the agreement by failing to pay salary as agreed from May 2016 to present.

66.      Plaintiff would show that as a direct and proximate result of the Defendants' breach of contract he has suffered damages in excess of the Court's jurisdictional limits, to wit, the sum of at least $260,000.00 in past due wages plus benefits for the period of his employment.

67.      Plaintiff would further show and plead that he has made all necessary demands for his breach of contract claim and has satisfied any conditions precedent to the recovery of attorney's fees under Chapter 38 of the Texas Civil Practice and Remedies Code.

## VI.

## QUANTUM MERUIT/UNJUST ENRICHMENT/MONEY HAD AND RECEIVED

68.     Plaintiffs incorporates the allegations set forth in paragraphs 1-67 above as if set forth verbatim herein.

69.     Plaintiff would further show that Defendants Broron Texas and Broron Nigeria were enriched by, received actual money from and in equity and good conscience owes Plaintiff for the business related expenses that the Plaintiff bore at the request of the company or on account of the company. Plaintiff would further show that he deposited actual cash into the company account to cover other company expenses as needed or requested by the company and that none of those loans, expenses and cash advances have been repaid and total $28,614.48.

70.     Defendants used, obtained and benefited from the property and funds delivered to it by the Plaintiff.

71.     In equity and good conscience, the sums deposited and expenses borne by Plaintiff should be reimbursed by Broron.

## VII.

## FRAUD AND FRAUDULENT INDUCEMENT

72.     Plaintiff incorporates the allegations set forth in paragraphs 1-71 above as if set forth verbatim herein.

73.     Pursuant to Texas law, Plaintiff pleads a cause of action against Defendants for Fraud, Fraudulent Misrepresentation and Fraudulent Inducement.

74.     Defendants made material representations to Plaintiff which were false including as follows:

      a.   That Plaintiff would be provided the United States based job of Asset Manager;

b.   That Plaintiff and his family would be provided life and healthcare insurance;

c.   That Plaintiff would be paid the contractual wages set forth in the employment contract;

d.   That after such wages were reduced and discontinued that the Defendants would reimburse Plaintiff for such wages, "catch him up" on unpaid or reduced wages and would continue to receive the agreed salary; and

e.   That funds advanced by Plaintiff for Defendants' expenses and deposited into the Defendant's accounts would be reimbursed by Defendants.

75.      When Defendants made each of these representations, Defendants knew the representations were false, or defendants made the representations recklessly, as a positive assertion, and without knowledge of their truth.

76.      Defendants made each representation with the intent that Plaintiff act on the representation and the Plaintiff ultimately did act in reliance on the representations directly and proximately causing injury and damages to the Plaintiff.

**VIII.**

**<u>BREACH OF CONTRACT - ESCALADE</u>**

77.      Plaintiff incorporates the allegations set forth in paragraphs 1-76 above as if set forth verbatim herein.

78.      Plaintiff would further show that he had a contract with Ojogho to purchase a Cadillac Escalade for Ojogho's personal use and be repaid by Ojogho for said purchase. Plaintiff performed that agreement by purchasing and paying for the vehicle in full. In breach of this contract, Ojogho failed to make payment on the amounts Osaghae had already paid for the vehicle in breach of the contract in question.

79.     As a consequence of this breach, Osaghae has been damaged in the sum of $20,000.00 together with interest and expenses incurred in attempting to recover this sum.

## IX.

## CORPORATE VEIL OF BRORON OIL & GAS, LLC (BRORON TEXAS)

80.     Plaintiff incorporates the allegations set forth in paragraphs 1-79 above as if set forth verbatim herein.

81.     Plaintiff would show that, as of January 2017, Broron Oil & Gas, LLC forfeited its legal existence in the State of Texas and that as of that date, the sole manager of Broron Texas, Henry Ojogho, is liable for the debts of Broron Texas.

82.     Pleading alternatively, Plaintiff would show that Ojogho caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the Plaintiff and other similarly situated employees and creditors of Broron Texas primarily for his direct personal benefit and in so showing would incorporate the allegations set forth above.

83.     Plaintiff would further show that as a result of the foregoing actions each of the defendants should be held jointly and severally liable with one another for any damages awarded herein.

## X.

## FRAUDULENT TRANSFER/DECLARATORY JUDGMENT/LIEN/FORECLOSURE

84.     Plaintiff incorporates the allegations set forth in paragraphs 1-83 above as if set forth verbatim herein.

85.     Upon information and belief, while Defendants were indebted to Plaintiff, Defendants fraudulently transferred funds of Broron Texas to acquire and maintain an interest in real property located in Fort Bend County, Texas. The Property is identified as Section 9, Block

1, Lot 34 of Cinco Ranch Northwest, Fort Bend County, Texas ("Cinco Ranch Property"). Upon information and belief, the funds invested in the Cinco Ranch Property were transferred from Defendant Broron in an effort to defraud the creditors of Broron including the employees of Broron, like the Plaintiff, who were owed wages and other expenses. Plaintiff requests the Court order the disgorgement of any funds so transferred.

86. In addition, Defendant Ojogho is not a citizen of the United States and does not, has not and does not intend to reside at the Cinco Ranch Property and as such Plaintiff's seek a declaration that the Cinco Ranch Property is not, has not been, and cannot be the homestead property of Defendant Ojogho.

87. Finally, Plaintiff asks the Court to enter a lien against the Cinco Ranch Property for the full amount of the damages sought by this lawsuit and to order foreclosure of said lien as to any interest in the Cinco Ranch Property held by Defendant, Ojogho.

## XI.

### ATTORNEY'S FEES

88. Plaintiff incorporates the allegations set forth in paragraphs 1-87 above as if set forth verbatim herein.

89. In accordance with the Texas Civil Practice and Remedies Code §38.001 *et seq*, the Plaintiff requests the Court award all costs and attorney's fees and expenses incurred in connection with the matter set forth herein.

## XII.

### EXEMPLARY DAMAGE

90. Plaintiff incorporates the allegations set forth in paragraphs 1-89 above as if set forth verbatim herein.

91.	Plaintiff would further show that the acts and omissions of the Defendants complained of herein were committed fraudulently or with malice or reckless indifference to the rights of the Plaintiff and that in order to punish the Defendants for engaging in unlawful business practices and to deter such omission in the future Plaintiff seeks recovery from the Defendants of exemplary damages.

## XIII.

## CONDITIONS PRECEDENT

92.	Plaintiff affirmatively pleads that all conditions precedent have been performed or have occurred as required by Texas Rule of Civil Procedure 54.

## XIV.

## TEXAS WORKFORCE COMMISSION CLAIMS

93.	To the extent any claims made in this lawsuit fall within the primary, exclusive jurisdiction of the Texas Workforce Commission, Plaintiff affirmatively disclaims that he is seeking recover of those claims unless and until such time as he is permitted to do so by the interpretation of this Court or any finding of the Texas Workforce Commission.

## XV.

## SEIZURE AND SALE OF ESCALADE

94.	Plaintiff further pleads for a declaratory judgment as to the right to seize and sell the Escalade to cover expenses and damages as set forth herein.

## XVI.

## RELIEF

95.	As a result of the above described claims and causes of action, Plaintiff seeks judgment from the Defendants as follows:

1. Under 18 U.S.C. §1964:

   a. Three times the damages incurred by the Plaintiff as a result of the Broron Fraud;

   b. All costs of suit;

   c. Reasonable attorney's fees;

   d. An order dissolving Broron Oil & Gas, LLC; and

   e. An order divesting Defendant Ojogho of any asset obtained or maintained by him as a result of the Broron Fraud.

2. Loss of wages in the past including but not limited to unpaid salary;

3. Economic Damages due to breach of contract, including reliance or restitution damages;

4. Incidental and consequential damages due to breach of contract;

5. All actual and economic damages occasioned by Defendants' fraudulent conduct;

6. The return of any and all expenses and funds delivered to or on behalf of the Defendants by Plaintiff;

7. Payment of the balance due under the loan agreement for the Escalade;

8. A Declaratory Judgment authorizing the seizure and sale of the Cadillac Escalade with such funds to be held in trust pending the final outcome of this matter;

9. The entry of a lien against the Cinco Ranch Property for the full amount of damages sought by this lawsuit;

10. An order of foreclosure on the lien against the Cinco Ranch Property for the full amount of any interest in the Property owned by the Defendants;

11. Mental Anguish damages as found by the Court or trier of fact;

12. Attorneys fees and expenses under Tex. Civ. Prac. & Rem. Code 38.001 et seq.;

13. Pre and post judgment interest at the maximum amounts provided at law; and

14. All costs incurred as a result of this suit.

## PRAYER

Wherefore Premises Considered, Plaintiff Item Osaghae prays that Defendants, Broron Oil & Gas, Ltd., Broron Oil & Gas, LLC and Henry Ojogho, be cited to appear and answer herein and that Plaintiff have judgment against Defendants for the relief and damages as specified herein, and for such other and further relief as this Court deems equitable and just.

Respectfully submitted,

LAW OFFICES OF KENNETH R. JONES, L.L.P.

By_____//S// *Kenneth R. Jones*_____
Kenneth R. Jones
State Bar No. 24002373
Fed. Bar # 22019
3131 Eastside St., Ste 440
Houston, Texas 77098
Telephone (713) 225-1754
Telecopier (713) 225-1828

ATTORNEYS FOR PLAINTIFF ITEM OSAGHAE